April, 1830.

Copper et al.
v.
Wells et al.

### COPPER, and the EXECUTORS OF CALBRAITH, v. WELLS, HOY, and others.

Upon a bill for specific performance of an agreement, that at the expiration of a building lease the buildings and machinery should be valued by three indifferent persons, one to be chosen by each party and the third to be mutually chosen by them, or in case of their disagreement, then by the two who shall have been chosen by the said parties. If one party has made choice of an appraiser and the other refused to choose one, this court cannot compel him to choose one.

If the appraiser chosen by one party, without the concurrence of the other, made an appraisement, it is an exparte proceeding, irregular and void.

But in such cases, where a specific performance of the agreement has become impossible, or from the nature of the contract cannot be decreed, the party aggrieved is entitled to compensation in damages for the non-performance of the agreement.

There is a distinction between damages arising from the non-performance of a contract, which damages may be partly imaginary, and partly the result of actual or supposed loss or inconvenience; and the damages to which a party is justly entitled for repairs or beneficial and lasting improvements, under the faith of an engagement which is afterwards discovered to be defective, or impossible to be executed by default of the opposite party. In the first case, the damages can be properly assessed only by a jury upon an issue of *quantum damnificatus;* in the last, the compensation may be safely ascertained by an inquiry before a master, or commissioner, or at the discretion of the court an issue may be awarded.

In cases of the latter description the jurisdiction of this court is complete : the party has a clear equity to be restored to the money paid for improvements, which are rendered valueless to him, but are greatly beneficial to the owner of the land.

Executors of a mortgagee, standing in the place of the testator, have an interest in the controversy; the mortgage is in their hands, and they have a right to come into this court, to be satisfied the amount of it, out of the property bound by it, or its proceeds.

If probate was granted without the state, *query ?*

THE complainants' bill sets forth, that Gideon H. Wells, and Hannah his wife, (who is since deceased,) being seized and possessed of a tract of land in Trenton, through which the Assanpink flows, and which affords an extensive water power for the construction of manufactories, entered into articles of agreement with Hugh Christy and five others, in relation to the establishment of a manufactory on the said stream. The articles bear

date on the 30th March, 1814. Wells and wife, the party of the first part, covenanted and agreed with Christy and others, the party of the second part, that they would furnish the party of the second part with a certain quantity of water, for the purpose of carrying on certain works to be by them erected, and furnish them with a lot of ground, with the privilege of a road for passing and repassing at all times; that these privileges should be enjoyed by the party of the second part for fifteen years from the date of the articles, at the yearly rent of 600 dollars. The party of the second part covenanted and agreed, that they would erect on the lot a suitable stone and brick building for the purpose of a cotton manufactory, and proceed to the manufacturing of cotton as soon as the building and machinery should be completed for that purpose, and would pay the annual rent of 600 dollars; that the machinery should not be removed, but remain in the building as a security for the rent reserved; that at the expiration of the said term of fifteen years, the building and the machinery of every kind shall, if so desired by the party of the second part, be valued by three indifferent persons, one to be chosen by each of the parties, and the third to be mutually chosen by them—or in case of their disagreement, then by the two who shall have been chosen by the said parties; and the said building and improvements shall be paid for by the said party of the first part, agreeably to the said valuation— or, the term of the said party of the second part shall be continued for ten years longer, on the same conditions, if the said party of the second part shall request the same; that at the end of the said additional term of ten years, the party of the first part shall be at liberty to prolong the same for ten years more, or to take the buildings and machinery at a valuation, as above provided; that at the end of the second term of ten years, the buildings and machinery of every kind shall be valued, in the mode before stated, and paid for by the party of the first part; that the said instrument was duly acknowledged and recorded; that the said parties of the second part, after acquiring said lease, erected on the premises a large brick building as a cotton factory, procured machinery, and commenced business upon the premises, paying the rent as agreed on; that by sundry mesne conveyances the shares of the said parties of the second part became vested in John Greiner and John Groves—

April, 1830.

Copper et al.
v.
Wells et al.

the former holding five shares, and the latter one share ; that a judgment was obtained against the said Greiner and Groves in the supreme court of this state, in September term, 1825, on which an execution afterwards issued, and the right of the said defendants in the said property was sold and conveyed by the sheriff of the county of Burlington to Wm. Haverstick, of Philadelphia, who thereby became the exclusive owner of all the interest and rights of the original lessees ; that after Haverstick became owner, he entered into co-partnership with James Hoy in the manufacturing business—he the said Haverstick finding the funds, and the said Hoy devoting his labour and skill—the profits to be equally divided ; that on the 29th of May, 1826, Haverstick and Hoy gave a bond to Hector Calbraith, to secure the payment of $5000, and as a collateral security Haverstick executed to the said Calbraith a mortgage on all his right and interest in the said premises ; that Calbraith afterwards departed this life, leaving a last will and testament, and leaving Hector Thompson and Stephen Woolston executors thereof. That the partnership between Haverstick and Hoy was afterwards dissolved, and on or about the 5th of March, 1829, Haverstick caused a notice in writing to be served on Gideon H. Wells and Charles M. Wells and Lewis Waln, informing them that he intended to have the said buildings and machinery appraised by three indifferent persons in the manner prescribed in the said agreement, and that he had chosen John Woods on his part for that purpose, and would attend on the premises on the 11th of March, 1829, for the purpose of making the valuation ; and the said Wells, &c. were requested to choose a person and unite in the said appraisement ; and also, that it was his intention to give up possession of the said premises. That Haverstick and Woods attended, but no person appeared on the other side, and an appraisement was made by Woods alone, the amount of which was $14,337 45.

The bill further states that Haverstick, becoming insolvent, executed to James C. Copper, one of the plaintiffs, an assignment of all his interest in the said premises and the said lease or agreement, in trust, for certain purposes in the said deed of assignment specified ; that Copper caused to be served on Gideon H. Wells, Charles M. Wells, and Lewis Waln, notices of taking an appraisement and valuation of said property on the 31st day of March,

1829, and of his intention to deliver up on that day the possession of the same; that Copper attended, but Wells declined making any appointment, and caused the said buildings to be locked up; that he also declines receiving possession; that the rent then due was $226 37½, which Copper offered to deduct out of the valuation, which was also refused; that the said Hoy is in possession at sufferance under the said Gideon H. Wells, and colludes with him to defeat the rights of the complainants.

It is further shown, that Hannah the wife of Gideon H. Wells, died in 1824, leaving five children, her heirs at law, being also children of Gideon H. Wells; and also a last will and testament, or an appointment in the nature thereof; and that by virtue of a conveyance from Wells and wife, subsequent to the said agreement, and of divers other conveyances subsequent thereto, the legal estate in said premises is now vested in the said Lewis Waln and Charles M. Wells, in fee simple, subject to certain trusts and conditions in the said conveyances specified.

The relief prayed, is, that the said Gideon H. Wells and the assignees and representatives of Hannah Wells, may specifically perform the convenants and stipulations contained in the said lease or agreement, and that the valuation made by the said Woods may be confirmed; or that an estimate of the amount and value of the buildings and machinery be made by a master, or under his direction, and that the amount of such appraisement be decreed to be a lien upon the said premises; that the defendants be decreed to pay the same by some short day, or in default thereof that the same be sold; that the proceeds be appropriated to the satisfaction of the said mortgage debt to Calbraith, and the residue to the said James C. Copper.

To this bill the defendants, with the exception of James Hoy, have *demurred*, as well for want of equity, as because the said executors of Calbraith have no lawful right to sue. This cause was submitted to the court upon the pleadings, in the term of January last.

*G. Wood*, for the complainants.

*G. D. Wall*, for the defendants.

April, 1830.

Copper et al.
v.
Wells et al.

THE CHANCELLOR.    Have the complainants exhibited a proper case for equitable relief?

The complainants represent those who made the original agreement with Wells and wife, in 1814.   It is manifest that on the strength of that agreement, expensive buildings were constructed, and large sums of money expended in purchasing machinery necessary for the manufacturing business.   The fifteen years mentioned in the contract ended on the 30th of March, 1829; the lease then expired by its own limitation, unless the lessee requested a continuance.   In this case such request was not made; on the contrary, the party then in interest and representing the original lessees, gave notice to those having the legal estate, that the possession would be given up, and that a valuation was desired, of the building and machinery; the complainant having chosen one appraiser, according to the stipulation in the lease. The defendants refused to receive the possession, or to unite in the appraisement.   The rent (with the exception of a small part of it) was paid; and it was offered that this should be allowed out of the valuation.

As to the first species of relief prayed for: can the court decree a specific performance?   Clearly not.   The principle is well settled that the court has no power to compel a party to appoint an arbitrator, and of course that a specific performance cannot be decreed. In *Mitchell* v. *Harris*, 2 *Ves. jr.* 129, Lord Eldon inquired whether there was any instance of a bill to compel parties to name arbitrators; and in *Street* v. *Rigby*, 6 *Ves. jr.* 818, the same chancellor remarks, " There is considerable weight as evidence of what the law is, in the circumstance that no instance is to be found of a decree for specific performance to name arbitrators, or that any discussion upon it has taken place, in experience, for the last twenty-five years."   The same principle is recognised in *Nichols* v. *Chalie*, 14 *Ves. jr.* 270; *Waters* v. *Taylor*, 15 *Ves. jr.* 10; *Wilkes* v. *Davis*, 3 *Meriv.* 509; and has been recently confirmed by this court in the late case of *Newbold and others* v. *Pearson*.

It appears however, that the complainant had a valuation made of the buildings and machinery by one Woods, after a notice given to the other party to choose an appraiser.   The property was appraised at $14,337 45, and the bill seeks to have this appraisement confirmed.   It is manifest that this appraisement was not made

in the manner prescribed by the article of agreement. It is an
exparte proceeding, altogether irregular and void, and can fur-
nish no ground for a decree of this court. The court can afford
no aid in that way.

Is then the complainant, Copper, without a remedy? Shall a re-
fusal on the part of the defendants to comply with the agreement,
and name an arbitrator to adjust and settle the amount justly due
for the improvements and property of the complainant, have the ef-
fect of securing to him the benefit of such property, and leaving the
complainant without redress? Such cannot be the law. Upon
broad principles of justice, Copper, as the representative of Haver-
stick, is entitled to a remuneration commensurate with the value
of the improvements, subject to the mortgage incumbrance. It
cannot be pretended that Wells can compel Copper, the complai-
nant, to extend the lease against his will, much less that he has a
right to the building and machinery without making satisfaction.

If the complainant has a remedy, is it in this court?

It sometimes happens in cases of contracts, which from their
nature and on general principles may be decreed to be specifically
performed, that owing to some circumstances such performance
has become impossible; as where after a contract for the sale and
purchase of land, the vender sells the property to a bona fide pur-
chaser, without notice, and for a valuable consideration, a spe-
cific performance will not be decreed, for such decree would be nu-
gatory. In such cases, as well as in the present, when from the
very nature of the contract, a specific performance cannot be de-
creed, the party aggrieved is entitled to compensation or to dam-
ages for the non-performance of the agreement, either in a court of
law or of equity. Which is the proper tribunal, is a fair question
for consideration.

It is true, in general, that a party whose rights have been injur-
ed by the non-performance of a lawful contract, has an ample reme-
dy at law, and must seek redress in the common law courts. The
old doctrine was, that he might have his election to resort either
to a court or law for damages, or to a court of equity for a specific
performance. And Sir William Grant, the master of the rolls,
in *Greenaway* v. *Adams,* 12 *Ves. jr.* 401, remarks, that if a court
of equity does not see fit to decree a specific performance, or finds
that a contract cannot be specifically performed, either way, he

would have thought, there was an end to its jurisdiction; for in the one case, the court does not see reason to exercise the jurisdiction, in the other it finds no room for its exercise. It seems, he adds, that the consequence ought to be that the party must seek his remedy at law. It is equally true, however, that the ancient landmarks between the two courts have been in this particular somewhat shaken; and the result has been favourable to the enlargement of the jurisdiction of this court.

The case of *Denton* v. *Stewart*, decided by Lord Kenyon, master of the rolls, in 1786, 1 *Cox*, 258, is a leading case in favor of such jurisdiction. There the plaintiff had furnished and repaired the house, and the defendant stated in his answer, that he had actually sold the house to another person for a full valuable consideration; it was referred to a master to inquire what damages the plaintiff had sustained by the defendant's not performing his agreement, and what the master should find to be the damage in such respect, together with the costs of suit, should be paid by the defendant to the plaintiff. In *Greenaway* v. *Adams,* above cited, the master of the rolls, though he had strong doubts, yielded those doubts to the authority of Lord Kenyon, and made precisely the same decree. The next case was *Gwillim* v. *Stone*, 14 *Ves. jr.* 128. The bill prayed that a contract entered into by the plaintiff for a purchase from the defendant might be delivered up, on the ground of the defective title of the defendant; and that compensation might be made to the plaintiff, for the loss he had sustained by the defendant's failure to carry the contract into execution. The master's report was against the title of the defendant, but the master of the rolls declined an order of reference to a master to inquire as to the injury sustained, and remarked that he had some doubt upon the principle laid down in *Denton* v. *Stewart*. In *Todd* v. *Gre,* 17 *Ves. jr.* 274, Lord Eldon held, that a bill for a specific performance, praying in the alternative an issue or inquiry with a view to damages, was not the course of proceeding in equity, *except in very special cases*, and said that the case of *Denton* v. *Stewart* could not be supported according to the principles of the court, unless it was on this distinction, that the defendant had, pending the suit, put it out of his power to perform the agreement. In a late case, *Blore* v. *Sutton*, 3 *Meriv.* 247, the competency of a court of equity to give damages for the non-performance of an agree-

April, 1830.

Copper et al.
v.
Wells et al.

ment, was said by Lord Eldon to have been questioned by very high authorities, notwithstanding the case of *Denton* v. *Stewart.* In the case before him he refused a decree which would be merely for damages, and not a compensation for the benefit the estate had received.

The case of *Denton* v. *Stewart* has been recognized in this country by Chancellor Kent, in *Phillips* v. *Thompson,* 1 *John. C. R.* 131. The bill there was for a specific performance. This relief was denied, because the contract was void under the statute of frauds, but the complainant having sustained damages by the cutting of the canal and lowering his dam, an issue of quantum damnificatus was awarded ; the chancellor remarking he was apprehensive the complainant would be remediless without the aid of the court. And in *Parkhurst* v. *Van Cortlandt,* 1 *John. C. R.* 274, the court ordered a reference to a master. In that case the plaintiff had made permanent improvements on the property, and the execution of the contract was resisted on the ground of its being within the statute of frauds.

In *Newbold and others* v. *Pearson,* in this court, a reference was lately ordered where permanent improvements had been made and a specific performance had become impossible.

Taking all the cases together, the law can scarcely be considered as entirely settled. I should not feel willing to go the length of saying that in any instance a party might file a bill in the alternative, praying a specific execution of the contract, and if that could not be granted, then an issue or inquiry to ascertain the damages ; that would be introducing into this court suits, over the subject matter of which the courts of common law have ample jurisdiction, and can afford ample relief. But there is a wide distinction between mere damages arising from the non-performance of a contract, which damages may be partly imaginary and partly the result of actual or supposed inconvenience or loss, and the compensation to which a party is justly entitled for repairs or beneficial and lasting improvements made to property, under the faith of an engagement, which is afterwards discovered to be defective in itself, or impossible to be executed by the default of the opposite party. In the one case, the damages can be properly assessed only by a jury, upon an issue of *quantum damnificatus;* in the other, the compensation may be safely ascer-

3

April, 1830.

Copper et al.
v.
Wells et al.

tained by an inquiry before a master or commissioners, or at the discretion of the court an issue may be awarded. In cases of the latter description the jurisdiction of this court is complete. The party has a clear equity to be restored to the money paid for improvements, which are rendered valueless to him, but greatly beneficial to the owner of the land. It was so held by the lord keeper in *Hollis* v. *Edwards & al.* 1 *Ves.* 159. There the plaintiff, in consequence of a parol agreement for the execution of a lease, had expended large sums on the premises. The statute of frauds was pleaded, and successfully; but no doubt was expressed as to the right of recovering in this court the money expended for improvements. This case does not appear to have been even called in question, and the one before the court is clearly within its principles.

If I had doubts as to the plaintiff''s remedy, I should be inclined to overcome them and give him aid, on the ground that he can only have adequate relief in this court. The improvements put on the premises are permanent and valuable, and it is right that they should be bound for the reimbursement of the complainant. The claim is in equity a lien on the property, and unless it is so considered the complainant may be without remedy. Before a judgment at law could be obtained, such might be the situation of the property and parties, as that the judgment would be altogether nugatory, and the clear right of the complainant defeated.

The second ground of demurrer, to wit, that the executors of Calbraith have no legal right to come into this court to sue as complainants, is not exactly understood by the court. Standing in place of their testator, they have an interest in the controversy. The mortgage of the testator is in their hands, and they have a right to be satisfied the amount of it out of the property bound by it, or out of the proceeds of said property. Where the letters testamentary were issued, does not appear on the face of the bill. If it shall turn out that they were granted without the state, the objection may be taken at another stage of the cause.

Let the demurrer be overruled with costs.